UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BYRON HARRIS, *et al.*, | ) | CASE NO. 4:23-cv-1236 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN DOUGLAS FENDER, *et al.*, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | |

Before the Court is Defendants' motion for summary judgment on all claims asserted by Plaintiffs. (ECF No. 57). Plaintiffs filed a timely opposition, (ECF No. 62), and Defendants filed a reply in support, (ECF No. 66). For the reasons discussed below, Defendants' motion for summary judgment is **GRANTED** and judgment is entered in favor of Defendants on all claims.

**I.     BACKGROUND**

On June 23, 2023, Plaintiffs Bryon Harris, Lamonte Fowler, Matthew Steffen, Christopher A. Kelson, and Ronald Collins, inmates at CoreCivic's Northeast Ohio Correctional Center ("NEOCC"), filed a Complaint and Request for Injunction against Defendants Warden Douglas Fender, Inst. Inspector Yolanda Payne, Assistant Warden David Bobby, and Unit Manager Chief C. Harris.[1] (ECF No. 1). In relevant part, the complaint alleges that Plaintiffs Harris and Fowler were assaulted by other inmates on June 1, 2023, while Plaintiff Kelson was stabbed by another inmate in March 2023. (*Id.* at PageID #4–5). The complaint asserts Eighth Amendment claims

---

[1] The complaint was originally filed by Plaintiff Harris, who was proceeding *pro se*, on behalf of the other defendants. (*See* Doc. 1, PageID #6–7, 12). Because a *pro se* individual may not represent other parties, the Court ordered Plaintiffs to cure the defect and amend the complaint to include all of their signatures. (ECF No. 5). Attorney Patricia Horner subsequently entered an appearance on behalf of Plaintiffs thereby curing the defect and rendering the Court's prior order moot. (ECF No. 6; Order [non-document] dated Aug. 30, 2023).

1

based on inadequate medical care and failure to protect against Defendants, who all worked at NEOCC at the time of the alleged assaults. (*Id.* at PageID #3–5). For relief, Plaintiffs request monetary damages, punitive damages, and an injunction placing Plaintiffs in protective custody. (*Id.* at PageID #5).

Because the pleadings alleged that Plaintiff Collins was deceased, (*id.* at PageID #4), the Court dismissed him as a plaintiff on June 30, 2023, (ECF No. 5, PageID #42). On January 17, 2025, Plaintiff Steffen was dismissed for want of prosecution for failing to respond to an order of the Court and otherwise failing to participate in the case. (ECF No. 59).

The same day, Defendants filed the instant motion for summary judgment. (ECF No. 57). Defendants argue that they are entitled to summary judgment because Plaintiffs failed to exhaust all available administrative remedies, all injunctive relief has been rendered moot, and Plaintiffs' claims fail on the merits. (*Id.* at PageID #213–26). Plaintiffs filed a response in opposition to Defendants' motion for summary judgment on March 13, 2025. (ECF No. 62). The opposition is written on behalf of only Plaintiffs Harris and Fowler, with Plaintiffs' counsel stating that Plaintiff Kelson has been non-communicative and has not provided discovery responses. (*Id.* at PageID #672–73). Defendants filed a timely reply in support of their motion for summary judgment. (ECF No. 66).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. The Rule states that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it is "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Schools*,

469 F.3d 479, 487 (6th Cir. 2006). A fact is material if "its resolution might affect the outcome of the suit under the governing substantive law." *Id*. The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The court views the facts and draws all reasonable inferences in favor of the non-moving party. *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). Once the moving party satisfies its burden, the burden shifts to the non-moving party to produce evidence that demonstrates that there is a genuine dispute of a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).

IV. DISCUSSION

    A. **Plaintiff Kelson – Failure to Respond**

As an initial matter, the Court must address Plaintiff Kelson's failure to file an opposition. Plaintiffs' opposition is written on behalf of only Plaintiffs Harris and Fowler, with Plaintiffs' counsel stating that Plaintiff Kelson has been non-communicative and has not provided discovery responses. (ECF No. 62, PageID #672–73). Because the opposition brief informed the Court of Plaintiff Kelson's unresponsiveness, the Court ordered Plaintiffs' counsel, Ms. Horner, to show cause why Plaintiff Kelson's case should not be dismissed for failure to prosecute. (ECF No. 63). Ms. Horner filed a response stating that she should have the opportunity to notify Kelson that his case might be dismissed, and he may need to retain new counsel before the Court dismissed his case. (ECF No. 64).

Defendants replied to Ms. Horner's response to the show cause order. (ECF No. 67). They argue that the Court should grant summary judgment in Defendants' favor on Plaintiff Kelson's claims because they met their burden under Rule 56 and: (i) he failed to timely respond to

3

Defendants' motion for summary judgment; (ii) he failed to request an extension of time to respond; and (iii) Ms. Horner was obligated to file an opposition on his behalf. (*Id.* at PageID #730–32). They also argue that Plaintiff Kelson is not entitled to relief under Rule 56(d) because "Ms. Horner has not shown by affidavit or declaration reasons why Plaintiff Kelson could not present facts essential to justify his opposition to summary judgment[.]" (*Id.* at PageID #731).

The Court generally agrees with Defendants. Defendants have moved for summary judgment in their favor on Plaintiff Kelson's claims. Plaintiff Kelson has not filed a timely response in opposition, nor has he requested an extension of time to respond. Although Ms. Horner has informed the Court that Plaintiff Kelson is non-responsive and did not provide discovery responses, this does not excuse him from the Court's deadlines or his obligation to file a timely opposition. As noted by Defendants, Ms. Horner did not provide any affidavit or declaration under Rule 57(d) explaining specifically why she could not present facts essential to justify an opposition on behalf of Plaintiff Kelson. Nor does she actually explain why she is unable to provide an opposition on Plaintiff Kelson's behalf at all—other than merely stating he has been non-communicative (with no specific timeline) and failed to provide discovery responses (with no explanation as to what discovery was needed and why it prevents the filing of an opposition). The Court will not dismiss Plaintiff Kelson's claims for failure to prosecute, but it will not grant an extension of time for Plaintiff Kelson to file an opposition, seek new counsel, or otherwise respond. The Court finds that Defendants have provided sufficient Rule 56 evidence to justify summary judgment on Plaintiff Kelson's claims. For the reasons stated herein, the motion for summary judgment is **GRANTED** as to Plaintiff Kelson.

B.	Abandoned Claims – Plaintiffs Harris and Fowler

Reviewing the parties' briefing, there appear to be several claims that Plaintiffs Harris and Fowler have now abandoned. In their motion for summary judgment, Defendants provide specific arguments for dismissing Plaintiffs': (i) claims for injunctive relief, (ECF No. 57, PageID #217); (ii) claims against Defendant Bobby, (*id.*); (iii) supervisory claims against Defendants in their official capacities, (*id.* at PageID #217–21); (iv) Eighth Amendment claims based on denial of adequate medical care, (*id.* at PageID #222–25); and (iv) negligent operation and/or training claims, (*id.* at PageID #225–26). Each of these arguments was set out in separately titled sections of Defendants' motion. Plaintiffs' opposition brief does not address any of these arguments for dismissal nor does it discuss these claims in any capacity. Plaintiffs Harris and Fowler only address Defendants' arguments regarding: (i) exhaustion of administrative remedies; and (ii) the merits of their Eighth Amendment failure to protect claims. (ECF No. 62, PageID #674–81).

Because they offered no opposition in response to the above arguments for dismissal raised by Defendants, Plaintiffs Harris and Fowler have abandoned each of the associated claims and waived any argument in opposition to the dismissal of those claims. *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (collecting cases); *Santo's Italian Café LLC v. Acuity Ins.*, 508 F. Supp. 3d 186, 207 (N.D. Ohio 2020) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *McNamara v. GM, LLC*, 189 F. Supp. 3d 685, 699–700 (N.D. Ohio 2016) ("Because Plaintiff failed to meet his burden in opposing summary judgment on his harassment claim, Plaintiff has abandoned this claim

5

and waived any argument concerning dismissal of such claim."). Accordingly, the Court **DISMISSES** Plaintiffs Harris's and Fowler's claims for injunctive relief, claims against Defendant Bobby, supervisory claims against Defendants in their official capacities, Eighth Amendment claims based on denial of adequate medical care, and negligent operation and/or training claims. For Plaintiffs Harris and Fowler, only their Eighth Amendment claims for failure to protect remain pending before the Court.

### C. Failure to Exhaust

Defendants argue that the complaint should be dismissed because Plaintiffs failed to exhaust their administrative remedies before filing this action. (ECF No 57, PageID #213–17). Plaintiffs respond that they filed informal complaints and grievances and utilized the grievance procedures to the best of their abilities, but they were prevented from filing any appeals because of the actions of Defendants. (ECF No. 62, PageID #674–76). Defendants reply that Plaintiffs failed to controvert Defendants' admissible evidence that Plaintiffs had access to the grievance process, but they ultimately failed to comply with the grievance process and exhaust all the administrative steps. (ECF No. 66, PageID #718–22).

Under the Prison Litigation Reform Act ("PLRA") "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983, 984, 152 L. Ed. 2d 12(2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, 149 L. Ed. 2d 958 (2001). "[E]xhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot

6

grant the particular relief requested, and 'even where [the prisoners] believe the procedure to be ineffectual or futile . . . .'" *Pack v. Martin*, 174 F. App'x 256, 262 (6th Cir. 2006) (internal citations omitted) (alteration in original).

The exhaustion requirement is only satisfied by "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). Under the PLRA, a prisoner "exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

The Ohio Administrative Code established a three-step prison grievance system: (i) filing an informal complaint; (ii) filing a notification of grievance (filing a grievance); and (iii) filing an appeal of the disposition of grievance. Ohio Admin. Code § 5120-9-31(J). Thus, a prisoner's claim is properly exhausted only when a prisoner has pursued review at all three steps of the process. *See Pack*, 174 F. App'x at 262 (explaining that the Sixth Circuit "has interpreted the PLRA's exhaustion requirement to be satisfied if a Plaintiff files a grievance granting the prison 'fair notice' of the claim and appeals the denial of the grievance to the highest possible level").

### 1. *Plaintiffs Harris and Fowler*

The record before the Court shows that Plaintiffs Harris and Fowler did not properly exhaust their administrative remedies under the Ohio Administrative Code. The alleged assault and conduct underlying the plaintiffs' inadequate medical care and failure to protect claims occurred on June 1, 2023. (ECF No. 1, PageID #4; ECF No. 57-6, PageID #319). Thus, to properly

7

exhaust their claims against Defendants, Plaintiffs Haris and Fowler needed to file an informal complaint by June 15, 2023. *See* Ohio Admin. Code § 5120-9-31(J)(1). Plaintiff Fowler provided a copy of an informal complaint that he filed on June 11, 2023, which relates to the June 1, 2023 assault and complaints about a denial of medical attention and inadequate protection/housing. (ECF No. 62-1, PageID #682–84). Plaintiff Harris filed an informal complaint relating to the June 1st assault on June 15, 2023.[2] (ECF No. 58-1, PageID #428). Thus, there is evidence to demonstrate that both Plaintiffs Harris and Fowler complied with the first step of the grievance procedure.

      a.  Failure to exhaust Step Two

But there is no evidence that Plaintiffs Harris and Fowler complied with step two of the grievance procedure. Once an inmate submits an informal complaint, prison staff must issue a response within seven days. Ohio Admin. Code 5120-9-31(J)(1). If there is no response after the seven days, the Inspector of Institutional Services may grant an additional four days to respond. *Id.* If no response is provided after the additional days, eleven days in total, "the informal complaint step is automatically waived and the inmate may proceed to step two." *Id.* If the inmate is dissatisfied with the state's informal complaint response, or the state has waived step one, an inmate must file a notification of grievance (formal complaint) with the Inspector of Institutional Services within 14 days of the informal complaint response or waiver. Ohio Admin. Code 5120-9-31(J)(2).

For Plaintiff Fowler, there is no evidence that prison officials submitted any response to, or otherwise resolved, the informal complaint he filed on June 11, 2023. Thus, Plaintiff Fowler was required to file a formal complaint regarding the alleged June 1st assault by July 6, 2023. But

---

[2] He also filed a second informal complaint on June 16, 2023. (ECF No. 58-1, PageID #429).

Plaintiff Fowler did not do so. In an affidavit, Angel Mateer, Grievance Coordinator at NEOCC, attests that Plaintiff Fowler: (i) did not file *any* formal grievances while incarcerated at NEOCC; (ii) did not file any grievances related to the June 1, 2023 assault; (iii) was transferred out of NEOCC on July 31, 2023; and (iv) submitted formal grievances on January 15, 2024 while incarcerated at Ross Correctional Institution that were unrelated to the alleged assault. (ECF No. 57-10, ¶¶ 12–13). Defendants provided a copy of Plaintiff Fowler's Grievance File, which reflects that he submitted no formal grievances related to his instant claims or the alleged June 1, 2023 assault. (*See* ECF No. 58-3). Plaintiffs do not provide any evidence to the contrary. The undisputed evidence establishes that Plaintiff Fowler did not file a formal complaint related to his claims and therefore he failed to comply with the second step of Ohio's grievance process.

For Plaintiff Harris, his two informal complaints appear to have been resolved on June 22, 2023 and June 23, 2023. (ECF No. 58-1, PageID #428–29). However, there is no evidence that Plaintiff Harris filed a formal complaint related to the June 1st assault. Angel Mateer attests that Plaintiff Harris submitted two informal complaints related to the June 1, 2023 assault but he did not file *any* formal grievances related to the assault. (ECF No. 57-10, ¶ 14). Once again, Plaintiff Harris provides no evidence to the contrary. The undisputed evidence establishes that Plaintiff Harris did not file a formal complaint related to his claims and therefore he failed to comply with the second step of Ohio's grievance process.

      b.      Arguments to excuse the failure to exhaust

Plaintiffs argue that their claims should not be dismissed for failing to comply with Ohio's grievance procedure because the record demonstrates that "Plaintiffs both used the grievance process while at NeoCC but where stymied by defendants' lack of responding, failure to provide access and restricting access." (ECF No. 62, PageID #675). An inmate is not required to exhaust

9

unavailable remedies. *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022). There are three circumstances where administrative remedies (grievance procedures) are considered unavailable to prisoners for purposes of administrative exhaustion:

> (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Id.* at 292–93 (quoting *Ross v. Blake*, 578 U.S. 632, 643–44, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016)). In this case, Plaintiff solely invoke the third circumstance.

That said, "[e]ven if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because this Circuit requires inmates to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Id.* at 293 (quoting *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)). When a prisoner shows affirmative efforts to comply with a prison's administrative procedures, the Court must evaluate "whether 'those efforts to exhaust were sufficient under the circumstances.'" *Id.* (quoting *Lee*, 789 F.3d at 677); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("This court requires an inmate to make affirmative efforts to comply with the administrative procedures and analyzes whether those efforts to exhaust were sufficient under the circumstances." (internal quotation marks omitted)).

For Plaintiff Fowler, Plaintiffs cite his informal complaint and his responses to interrogatories stating that he "kited" for help at Ross Correctional Institution. (ECF No. 62, PageID #675 (citing ECF No. 61-2, PageID #682–84, 686–88)). Yet Plaintiffs do not explain how,

10

or provide evidence demonstrating that, Defendants prevented or hindered Plaintiff Fowler's ability to file a formal complaint/notice of grievance related to the June 1, 2023 assault. General, unsupported allegations of this kind do not excuse Plaintiff Fowler from satisfying the exhaustion requirement under the PLRA. *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 997–98 (6th Cir. 2004).

For Plaintiff Harris, Plaintiffs cite two handwritten requests to submit informal complaints and an informal complaint asking for permission to file grievances. (ECF No. 675, PageID #675–76 (citing ECF No. 62-3, ECF No. 62-4, PageID #699)). The record reflects that Plaintiff Harris had faced a grievance restriction around the time of the June 1, 2023 assault. Angle Mateer attests that Plaintiff Harris was placed a on a 90-day grievance restriction on May 30, 2023 for abusing the facility grievance procedure by "filing multiple grievances with no merit, filing repeated kites and grievances, and being disrespectful to staff in his kites and grievances." (ECF No. 57-10, PageID #410). Mateer further attests that the grievance restriction did not apply to grievances regarding medical care or requests for protective custody review:

> Inmate Harris was permitted to pursue issues that present a substantial risk of physical injury, such as medical or safety concerns, through the inmate grievance procedure. Inmate Harris had unrestricted access to the kite system as demonstrated in Request Nos. 256816651 and 256603231. He was permitted to address emergency medical or safety issues through a kite to the institutional inspector or in person to institutional staff.

(*Id.*).

Here, the Court finds that the grievance process was not "unavailable" to Harris and, even if it were, his affirmative efforts were not sufficient to establish/excuse exhaustion. First, the Court will not consider the handwritten requests to file informal complaints as evidence demonstrating either exhaustion or the unavailability of administrative remedies because: (i) the handwritten notes do not contain a date or indication as to when they were supposedly filed; (ii) they contain no signature or other verification as to who submitted the requests; and (iii) there is no evidence

(affidavit, declaration, or other) confirming whether the handwritten requests were ever submitted to prison authorities and, if so, how they were resolved. (ECF No. 62-3). Simply put, the handwritten requests are unverified and do not provide reliable evidence to establish that reasonable attempts to exhaust were undertaken.

Second, the record does not demonstrate that Plaintiff Harris was barred from submitting grievances related to the June 1, 2023 assault. Defendants provided evidence that the relevant grievance restriction did not apply to any claims about medical care or requests for protective custody review; therefore, it did not bar Plaintiff Harris from utilizing the grievance process related to the instant Eighth Amendment claims based on inadequate medical care and failure to protect related to the June 1, 2023 assault. Plaintiffs have provided no evidence or argument to refute this evidence. Moreover, the record establishes that Plaintiff Harris did in fact file two informal complaints related to the June 1, 2023 assault and then never filed a formal complaint once they had been resolved. (ECF No. 58-1, PageID #428–29; ECF No. 58-2). Plaintiffs have provided no evidence that Plaintiff Harris: (i) was barred from filing a formal complaint challenging the resolution of his two informal complaints; or (ii) filed a formal complaint that was rejected. The record also does not reflect that Plaintiff Harris challenged the resolution of his informal complaint asking for permission to file grievances. Plaintiff Harris's affirmative efforts to comply with Ohio's prison grievance procedure in this case were insufficient to establish and excuse exhaustion.[3]

There is no genuine issue of material fact that Plaintiff Fowler and Plaintiff Harris failed to properly exhaust their Eighth Amendment claims against Defendants through Ohio's prison

---

[3] It should also be noted that the informal complaints were filed by Plaintiff Harris weeks after the May 30, 2023 grievance restriction was placed on him. This implies Harris's own knowledge/belief that the grievance process was available to him for the instant claims.

grievance procedure. *See Woodford*, 548 U.S. at 90 (requiring "proper exhaustion" of administrative remedies under the PLRA, such that a prisoner must use "all steps that the [prison] holds out"); *Lamb v. Kendrick*, 52 F.4th 286, 294 (6th Cir. 2022). Accordingly, the Court **GRANTS** summary judgment in Defendants' favor on Plaintiff Fowler's and Plaintiff Harris's remaining claims.

### 2. *Plaintiff Kelson*

The record before the Court shows that Plaintiff Kelson did not properly exhaust his administrative remedies under the Ohio Administrative Code. The alleged assault and conduct underlying his inadequate medical care and failure to protect claims occurred sometime in March 2023. (ECF No. 1, PageID #4; ECF No. 57-6, PageID #318). Thus, to properly exhaust his claims against Defendants, Plaintiff Kelson needed to file an informal complaint by April 14, 2023, at the latest. *See* Ohio Admin. Code § 5120-9-31(J)(1). But Plaintiff Kelson did not do so. Angle Mateer attests that Plaintiff Kelson: (i) did not file any grievance related to a March 2023 assault; (ii) did not file *any* grievances after August 2022 while incarcerated at NEOCC; and (iii) was transferred out of NEOCC on October 18, 2023. (ECF No. 57-10, ¶¶ 20–21). Defendants provided a copy of Plaintiff Kelson's Grievance File, which reflects that he submitted no informal or formal grievances related to his instant claims or the alleged March 2023 assault. (*See* ECF No. 58-4, PageID #637–49). With no opposition or evidence to the contrary, Defendants have established that there is no genuine issue of material fact that Plaintiff Kelson did not exhaust his administrative remedies. Thus, the Court **GRANTS** summary judgment in Defendants' favor on all of Plaintiff Kelson's claims.

13

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment (ECF No. 57) and **GRANTS** summary judgment in their favor on all remaining claims.

**IT IS SO ORDERED.**

Date: April 30, 2025

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**